IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MALIKA ABU-JNAED,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>The CITY OF CHICAGO Illinois, a municipal corporation, QUINCY JONES (#9709), BRIANA BRYD (#6802), ANDREW MORGAN (#1801), ROBERT FARANO (#18799), and NICHOLAS HERRING (#5685),<br><br>　　　　　Defendants. | Case No.<br><br>JUDGE<br><br>Magistrate<br><br>Jury Trial Demanded |

**PLAINTIFF MALIKA ABUJNAED'S COMPLAINT**

NOW COMES Plaintiff MALIKA ABU-JNAED (hereinafter referred to as "Plaintiff"), by and through her attorneys, JULIAN JOHNSON, THE LAW OFFICE OF JULIAN JOHNSON, LLC, and ANDREW STROTH, ACTION INJURY LAW GROUP, LLC, for Plaintiff's Complaint and Jury Demand against Defendants QUINCY JONES, BRIANA BRYD, ANDREW MORGAN, ROBERT FARANO, NICHOLAS HERRING and the CITY OF CHICAGO, Illinois, a municipal corporation, states as follows:

**JURISDICTION & VENUE**

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §1331 and §1367.

3. Venue is proper under 28 U.S.C. §1391(b). The events giving rise to the claims asserted in this Complaint occurred within this district.

1

**PARTIES**

4. Plaintiff, MALIKA ABU-JNAED, is a resident of Chicago, Illinois.

5. At all relevant times Defendants BRYD, JONES, MORGAN, FARANO, and HERRING were CITY OF CHICAGO Police Officers, employed by Defendant CITY OF CHICAGO, acting under color of law and within the course and scope of their employment.

6. Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at the time of the incident in this case, was the employer and principal of Defendants BRYD, JONES, MORGAN, FARANO, and HERRING. Should Plaintiff prevail on her claims, Defendant CITY OF CHICAGO must indemnify Defendants BRYD, JONES, MORGAN, FARANO, and HERRING on Plaintiff's claims pursuant to 735 ILCS 10/9-102.

**FACTS**

7. On December 31, 2019, Plaintiff pulled into a handicap parking space at Walgreens located at 7109 S. Jeffrey Blvd in Chicago. Plaintiff was with her friend who had recently been released from the hospital after having surgery. Plaintiff had driven her friend to Walgreens so that he could make a purchase.

8. Before Plaintiff could leave the parking space, Plaintiff's vehicle was blocked in by Defendants BRYD and JONES.

9. Defendants BRYD and JONES asked Plaintiff why she was parked in the handicap spot and Plaintiff informed them that she had just pulled in to drop off a friend who had surgery.

10. Defendants BRYD and JONES asked Plaintiff for her license and insurance.

11. Plaintiff informed Defendant JONES that she could provide him with her insurance verification on her phone.

12. Defendant JONES returned to his vehicle.

13. Upon returning to his vehicle, Defendant JONES said to Defendant BRYD, "this bitch getting it hard." Defendant Byrd was referring to Plaintiff.

14. Defendant JONES then stated to Defendant BRYD "I'm taking her ass in."

15. Defendant BRYD asked Defendant JONES, "she gave you attitude?"

16. Defendant JONES stated to Defendant BRYD, "I didn't like her attitude, she failed the test."

17. Defendant BRYD asked Defendant JONES if he was going to arrest Plaintiff to which Defendant JONES replied that he was and Defendant JONES went on to state, "I'm getting my shit ready."

18. As Defendant JONES and BRYD planned to arrest Plaintiff while they were sitting in their vehicle, they also looked for and joked about what other violations they could ticket Plaintiff for.

19. Defendants BRYD and JONES exited their vehicle and approached Plaintiff's vehicle.

20. Defendants BRYD and JONES then approached Plaintiff and asked Plaintiff to exit her vehicle so they could arrest her. Plaintiff explained that her license was valid and not suspended.

21. Defendants JONES called Defendant MORGAN to the scene.

22. Defendant MORGAN arrived at the location.

23. Plaintiff explained to Defendant MORGAN that she had all her paperwork and a valid license and asked why she was being arrested.

24. Defendants MORGAN, BRYD, and other Chicago Police officers pulled Plaintiff out of the vehicle and placed her in handcuffs.

25. Plaintiff had committed no crime at the time of her arrest.

26. Defendant JONES told other officers on the scene that Plaintiff had a valid driver's license.

27. Defendants FARANO and HERRING placed Plaintiff in the back of a transport wagon.

28. When Defendants FARANO and HERRING placed Plaintiff in the back of the transport vehicle, Plaintiff was handcuffed behind her back and she was not secured in a seatbelt.

29. Defendants BRYD and JONES returned to their vehicle and proceeded to drive to the station to process Plaintiff's arrest.

30. As they drove to the station, Defendants BRYD and JONES continued to make fun of Plaintiff and laughed at her.

31. During their drive back to the station, Defendants JONES and BRYD both referred to Plaintiff as a "bitch."

32. As Plaintiff was being transported to the station, she was thrown about the arrestee compartment of the transport vehicle because she was not secured in a seatbelt by Defendants FARANO and HERRING.

33. Plaintiff attempted to get the attention of Defendants FARANO and HERRING through the window that separated the arrestee compartment and the front passenger compartment.

34. Defendants FRANA and HERRING saw Plaintiff trying to get their attention.

35. Instead, of pulling the transport vehicle over and safely securing Plaintiff in the arrestee compartment, Defendants FARANO and HERRING decided to continue driving recklessly at a high rate of speed while Plaintiff violently slid around the arrestee compartment.

36. Defendant FARANO increased the speed of the vehicle knowing that it would continue to cause injury to Plaintiff.

37. As a result of the reckless driving, Plaintiff became lodged between the steps in the arrestee compartment and the door.

38. Defendants FARANO and HERRING saw that Plaintiff was on the floor and lodged between the stairs and the door and they took no steps to help Plaintiff.

39. Instead, Defendants FARANO and HERRING continued to drive recklessly to the station.

40. Plaintiff remained lodged between the stairs and the door the remainder of the transport.

41. When Defendants FARANO and HERRING arrived at the station, they were met by Defendants BRYD and JONES.

42. When Defendant HERRING opened the door to the arrestee compartment, Plaintiff fell from the steps where she was lodged onto the ground, injuring herself further.

43. Defendants HERRING and FARANO knew that Plaintiff was lodged between the door and the stairs and would fall when the door was opened, and they took no steps to prevent Plaintiff from injuring herself further.

44. While still on the ground after falling from the vehicle, Plaintiff informed Defendants HERRING, FARANO, JONES, and BRYD that she was injured and asked to be taken to the hospital.

45. Defendants FARANO, JONES, BRYD, and HERRING refused to take Plaintiff to the hospital.

46. Plaintiff was unable to walk into the police station because of her injuries.

47. Defendants JONES, HERRING, FARANO, and BRYD carried Plaintiff into the police station.

48. Once inside the police station, Defendant BRYD dropped Plaintiff to the ground.

49. When Plaintiff complained to Defendant BRYD about being dropped to the ground, Defendant BRYD stated, "you dropped yourself."

50. Defendant BRYD then told Plaintiff "get up, girl, get up."

51. Defendants BRYD, JONES, FARANO, and HERRING proceeded to make Plaintiff hobble into a processing room in the police station.

52. Plaintiff repeatedly asked to go to a hospital and her requests were refused.

53. Plaintiff was later transported from the police station to Jackson Park Hospital where she was treated for her injuries.

54. After being treated at Jackson Park Hospital, Plaintiff was transported back to the police station.

55. Plaintiff was searched after she returned from the hospital by an Unknown Female Police Officer.

56. Plaintiff's driver's license was recovered from her person by the Unknown Female Police Officer.

57. The Unknown Female Police Officer informed Defendants BRYD and JONES that Plaintiff had her driver's license.

58. Defendants BRYD and JONES disregarded the information provided to them by the Unknown Female Police Officer.

59. While at the police station, Plaintiff continued to experience pain in her body and had trouble walking.

60. Plaintiff asked Defendants BRYD and JONES to be taken back to the hospital.

61. Defendants BRYD and JONES refused to call for medical assistance for Plaintiff.

62. Instead of providing Plaintiff with medical care, Defendants BRYD and JONES quickly completed processing Plaintiff's arrest paperwork and released her.

63. An ambulance was called for Plaintiff after she was released from custody and while she was still at the police station in the lobby.

64. Plaintiff was transported back to Jackson Park Hospital by ambulance from the police station lobby.

65. As a result of this incident, Plaintiff suffered and continues to suffer from serious physical injuries and has endured months of physical therapy.

66. Defendants BRYD, JONES, and MORGAN fabricated police reports and falsely charged Plaintiff with crimes.

67. On July 31, 2020, Plaintiff's criminal case was terminated in her favor in a manner indicative of innocence.

## COUNT I
### (42 U.S.C. § 1983 – False Arrest)
### Against Defendants Bryd, Jones, & Morgan

68. Each of the foregoing paragraphs is incorporated as if fully restated herein.

69. Defendants BRYD, JONES, and MORGAN arrested Plaintiff without probable cause.

70. Defendants BRYD, JONES, and MORGAN fabricated police reports in arresting and charging Plaintiff.

71. Defendants BRYD, JONES, and MORGAN undertook this misconduct intentionally and violated Plaintiff's Fourth Amendment rights.

72. As a result of the misconduct described in this Count, Plaintiff suffered loss of liberty and other damages, which will be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT II
### (42 U.S.C. § 1983 – Conspiracy)
### Against Defendants Jones, Bryd, Morgan, Farano, and Herring

73. Each of the foregoing paragraphs is incorporated as if fully stated herein.

74. As described more fully above, Defendants JONES, BRYD, MORGAN, FARANO, and HERRING reached an express or implied agreement to violate Plaintiff's constitutional rights as described in the preceding paragraphs.

75. In furtherance of the conspiracy, each of the co-conspirators committed overt acts or omissions and was an otherwise willful participant in joint activity.

76. The misconduct described in this Count was undertaken with willfulness or reckless indifference to the rights of Plaintiff.

77. As a direct and proximate consequence of Defendants JONES, BRYD, MORGAN, FARANO, and HERRING'S misconduct, Plaintiff suffered damages, including emotional distress, pain and suffering, and monetary expense.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT III
### (42 U.S.C. § 1983 – Supervisory Liability)
### Against Defendant Morgan

78. Each of the foregoing paragraphs is incorporated as if fully restated herein.

79. Defendant MORGAN was the supervisor of Defendant Officers BRYD and JONES.

80. Defendant MORGAN knew about the unlawful conduct stated throughout this Complaint committed by Defendants BRYD and JONES.

81. Defendant MORGAN facilitated, approved, and condoned the unlawful conduct committed by Defendants BRYD and JONES.

82. Defendant MORGAN did nothing to stop the unlawful conduct committed by Defendants BRYD and JONES.

83. As a direct and proximate consequence of Defendant MORGAN'S misconduct, Plaintiff suffered damages, including emotional distress, pain and suffering, and monetary expense.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT IV
### (42 U.S.C. § 1983 – Fourth Amendment Objectively Unreasonable Conduct During Transport/Conditions of Confinement)
### Against Defendants Herring and Farano

84. Each of the foregoing paragraphs is incorporated as if fully restated herein.

85. As described in the above paragraphs, the totality of Defendants HERRING and FARANO'S misconduct in transporting Plaintiff was objectively unreasonable.

86. Defendants FARANO and HERRING intentionally failed to secure Plaintiff in their transport vehicle and recklessly drove causing severe injuries to Plaintiff.

87. Defendants FARANO and HERRING knew that their actions caused Plaintiff harm and they did nothing to assist and/or prevent Plaintiff from enduring additional harm.

88. Said actions of Defendants FARANO and HERRING were intentional and committed with reckless disregard for Plaintiff's rights.

89. As a direct and proximate consequence of Defendant HERRING and FARANO'S misconduct, Plaintiff suffered damages, including emotional distress, pain and suffering, and monetary expense.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT V
### (42 U.S.C. § 1983 – Fourth Amendment Inadequate Medical Care)
### Against Defendants Bryd, Jones, Herring and Farano

90. Each of the foregoing paragraphs is incorporated as if fully restated herein.

91. As described in the above paragraphs, Defendants BRYD, JONES, HERRING, and FARANO were put on notice of Plaintiff's medical needs.

92. Plaintiff's medical need was of a serious nature that required immediate medical attention and Defendants BRYD, JONES, HERRING, and FARANO'S actions in delaying to get Plaintiff medical treatment were objectively unreasonable.

93. Defendants BRYD, JONES, FARANO, and HERRING knew that their actions would cause Plaintiff harm.

94. Said actions of Defendants BRYD, HERRING, FARANO, and HERRING were intentional and committed with reckless disregard for Plaintiff's rights.

95. As a direct and proximate consequence of Defendant JONES, BRYD, HERRING, and FARANO'S conduct, Plaintiff suffered damages, including emotional distress, pain and suffering and, monetary expense.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

### COUNT VI
### (Illinois State Law – Malicious Prosecution)
### Against Defendants Bryd, Jones, Morgan, and the City of Chicago

96. Each of the foregoing paragraphs is incorporated as if fully restated herein.

97. Defendants BRYD, JONES, MORGAN, and the CITY OF CHICAGO, through its employees and agents, caused criminal proceedings to be initiated against Plaintiff.

98. Defendants BRYD, JONES, MORGAN, and the CITY OF CHICAGO, through its employees and agents, arrested Plaintiff without probable cause, fabricated police reports, and placed false charges upon Plaintiff.

99. Defendants BRYD, JONES, MORGAN, and the CITY OF CHICAGO, through its employees and agents, undertook these actions intentionally and with malice.

100.    The actions undertaken by Defendants BRYD, JONES, MORGAN, and the CITY OF CHICAGO, through its employees and agents, were willful and wanton.

101.    On July 31, 2020, the criminal charges against Plaintiff were dismissed and the case against Plaintiff was terminated in her favor in a manner indicative of innocence.

102.    As a result of Defendants BRYD, JONES, MORGAN, and the CITY OF CHICAGO'S, through its employees and agents, misconduct, Plaintiff suffered damages including emotional distress, pain and suffering, and other damages which will be proven at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT VII
### (Illinois State Law – Intentional Infliction of Emotional Distress)
### Against Defendants Bryd, Jones, Morgan, Herring, Farano, and the City of Chicago

103.    Each of the foregoing paragraphs is incorporated as if fully restated herein.

104.    As described more fully above, the conduct of Defendants JONES, BRYD, MORGAN, FARANO, HERRING, and the CITY OF CHICAGO, through its agents and employees, was extreme and outrageous in numerous ways, as stated more fully in and throughout this Complaint.

105.    Defendants JONES, BRYD, MORGAN, FARANO, HERRING, and the CITY OF CHICAGO, through its employees and agents, intended to inflict severe emotional distress on Plaintiff.

106.    Defendants JONES, BRYD, MORGAN, FARANO, HERRING, and the CITY OF CHICAGO, through its employees and agents, knew that their misconduct had a high probability of inflicting severe emotional distress on Plaintiff.

107. Defendants JONES, BRYD, MORGAN, FARANO, HERRING, and the CITY OF CHICAGO, through its employees and agents, misconduct caused Plaintiff to experience severe emotional distress.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

## COUNT VIII
**(Illinois State Law – Willful and Wanton Conduct)**
**Against Defendants Herring, Farano, and the City of Chicago**

108. Each of the foregoing paragraphs is incorporated as if fully restated herein.

109. At all relevant times, Defendants HERRING, FARANO, and the CITY OF CHICAGO, by and through its agents and/or employees, had a duty to exercise care in their interaction with Plaintiff.

110. In the manner described more fully above, Defendants HERRING, FARANO, and the CITY OF CHICAGO, by and through its agents and/or employees, breached their duty of care owed to Plaintiff, who was an arrestee under their control. They did so by driving in a reckless manner, including, but not limited to, driving the transport vehicle at a high rate of speed, knowing that their actions were causing injury to Plaintiff and they did not do anything to stop their misconduct or assist Plaintiff from suffering additional injury.

111. As a direct and proximate result of one or more of the aforementioned willful and/or wanton acts and/or omissions of Defendants HERRING, FARANO, and the CITY OF CHICAGO, by and through its agents and/or employees, Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

### COUNT IX
### (Indemnification)
### Against the City of Chicago

112. Each of the foregoing paragraphs is incorporated as if fully restated herein.

113. At all relevant times, Defendant CITY OF CHICAGO was the employer of Defendants JONES, BRYD, FARANO, MORGAN, and HERRING.

114. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the course and scope of their employment activities.

115. Defendants JONES, BRYD, FARANO, MORGAN, and HERRING committed the alleged acts under the color of law and in the course and scope of their employment with the CITY OF CHICAGO.

116. As a proximate cause of Defendants JONES, BRYD, FARANO, MORGAN, and HERRING'S unlawful acts, which occurred within the course and scope of their employment activities, Plaintiff suffered damages.

**WHEREFORE,** should the Individual Defendants be found liable, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief that this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

**DATED**: November 2, 2020    Respectfully Submitted,

                               MALIKA ABU-JNAED, Plaintiff

                           By: /s/ Julian Johnson
                               One of Plaintiff's Attorneys

Julian Johnson

13

The Law Office of Julian Johnson, LLC
55 East Monroe Street, Suite 3800
Chicago, Illinois 60603
Phone: 312-487-1711
Fax: 312-300-4029
julian@julianjohnsonlaw.com

Andrew M. Stroth
Action Injury Law Group, LLC
191 N. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Phone: 312-721-2444
astroth@actioninjurylawgroup.com